PONDER, Judge.
This is an appeal from a judgment awarding plaintiffs unemployment compensation benefits.
The only question before this court is whether the plaintiffs had a contract for the 1976 — 77 academic year, thereby rendering them ineligible for unemployment compensation benefits during the summer months.
We reverse and render.
Plaintiffs, professors at Nicholls State University, under tenure, had written contracts of employment, terminating on May 15, 1976.
They filed claims for unemployment compensation benefits, asserting that they were eligible under LSA-R.S. 23:1600(6), which reads in part as follows:
“. . benefits based on service in an instructional research or principal administrative capacity in an institution of higher education (as defined in R.S. 23:1472(23), . . . shall not be paid to an individual for any week of unemployment which begins during the period between two successive academic years, or during a similar period between two regular terms, whether or not successive, or during a period of paid sabbatical leave provided for in the individual’s contract, if the individual has a contract or contracts to perform services in any such capacity for any institution or institutions of higher education, ... for both such academic years or both such terms.”
Their claims were denied by the area office of the Department of Employment Security, the Appeal Referee and the Board of Review. The trial court reversed these decisions and found plaintiffs eligible for benefits.
Since, admittedly, plaintiffs had contracts for the 1975-76 academic year, their success or failure depends upon whether they had contracts for the 1976-77 academic year:
*979 Plaintiffs contend that since they had no written contracts of employment and since the university could not enter into unconditional contracts until the legislature had appropriated the money for the operation of the university they could not hold their employer liable should they not be employed the next academic year. Therefore they had no contract within the meaning of LSA-R.S. 23:1600(6).
The university contends that because of its tenure policy, and because it was understood that plaintiffs would be given a written contract later, as had been the practice for years, there was a contract within the meaning of LSA-R.S. 23:1600(6).
The lower court held that in the absence of a certain and definite price for the lease of the labor and a definitive agreement as to the capacity in which the parties would serve there was no contract. The court said that defendant’s tenure policy was no longer effective because not reaffirmed, ratified or continued by the Board of Trustees for State Colleges and Universities under the Louisiana Constitution of 1974. Further, the court stated that the tenure policy even if effective, was not a guaranty because of the necessity of funding by the legislature; that even if there was an agreement between plaintiffs and the university it was made conditional on the absence of financial exigencies, and on the approval of the president or chief administrative officer and of the appropriate management board and therefore there was no legally enforceable contract.
We disagree. Contracts can be either express or implied, LSA-C.C. Art. 1780. Silence or inaction may in some instances show an assent that creates an obligation. LSA-C.C. Art. 1817. It seems quite clear to us that there was a contract between plaintiffs and Nicholls. Plaintiffs fully expected to teach during the fall semester. Nicholls fully expected them to. Plaintiffs had tenure as teachers; had the university failed to employ them without legal cause, the university would have been liable. We therefore believe there was a contract.
The lower court in its reasons and counsel in their briefs have spent considerable effort and time in discussion of suspensive conditions to contracts. We believe there was a contract, and it is immaterial that it was subject to the conditions, either suspen-sive or resolutory, of availability of finances and approval of the proper officials. The fact that either party may not have had to perform an obligation under the contract because of the failure of the condition does not result in the conclusion that there never was a contract. The contract had existence and validity at the time; that plaintiffs would not have been required to teach without approval of the proper officials and without being paid does not mean there was no contract.
The statute we are construing does not require an unconditional contract; the court is not justified in adding that requirement.
We believe too that the court was incorrect in saying that Nicholls had no tenure policy because there was no proof of the reaffirmance of the policy by the Board of Trustees. No authority was given for that conclusion; we know of no law that would require the Board of Trustees to readopt and reaffirm the actions of its predecessor for them to continue to have validity.
In the absence of unequivocal words requiring that result, we doubt that there was legislative intent to afford unemployment benefits to teachers after their normal work year when both employer and employee expect the resumption of the employment relationship and when legal liability would result from a refusal to perform, once the conditions, if any, have been satisfied.
For these reasons the judgment of the District Court is reversed, and judgment is rendered sustaining the decision of the Louisiana Board of Review for the Division of Employment Security and dismissing plaintiffs-appellees’ action. Costs are to be paid by the appellees.
REVERSED AND RENDERED.